**THOMAS, Adm'r, v. KUNKEL et al.**

No. 21913. Sept. 25, 1934.

Rehearing Denied Dec. 18, 1934.

W. A. Killey and West, Gibson, Sherman, Davidson & Hull, for plaintiff in error.

W. O. Rittenhouse, for defendants in error.

PER CURIAM. Beatrice Ponds Harris died testate possessed of certain lands and personal property. By the terms of her will she left all of her lands to her husband, Joe Harris, Jr., who was also appointed executor under the will. Harris qualified as such executor and gave bond in the sum of $4,000, with the National Surety Company as surety. On September 14, 1926, Harris, in his individual capacity as sole devisee under the will, and without an order of court, sold and conveyed a portion of the land to John C. Kunkel, one of the defendants in error, for a recited consideration of $1. His reports thereafter filed in the probate proceedings disclose that on September 20, 1926, he charged himself as executor with the sum of $2,361, "Received from Jno. C. Kunkel, Jr., for sale of 100 acres of land in Creek county." Thereafter, in a supplemental report, he charged himself with an additional $100 from John C. Kunkel, Jr. Later, exceptions having been filed to his accounts, the county court restated his accounts and charged him with $2,600, received from John C. Kunkel, Jr., and upon the same hearing refused to allow certain payments made by the executor, and found that there was due from Harris to the estate the sum of $4,889.34. Harris resigned and Thomas was appointed administrator with will annexed, and, as such, filed suit against Harris and the bonding company in the district court, with the result that judgment was rendered against Harris for the full amount, and against the surety company for $1,920.70, which amount the court found would be sufficient to satisfy the legatees, claimants, atorneys, creditors, administrators, and court costs. The surety company paid this amount to the administrator. Thereafter the surety company, under its claim of subrogation, demanded that the administrator with will annexed file a petition for the sale of all of the lands belonging to the estate, including the lands sold to Kunkel. The county court directed the sale of the land. The district court reversed the county court and remanded the case, with directions to vacate and rescind the order of sale, and it is from this judgment that this appeal is taken.

As we view this case, there is but one question to be decided: Is a surety who has been compelled to pay a surcharge against its principal—the executor of an estate— a creditor of the estate and entitled to attack and set aside an unauthorized sale of a portion of the assets of the estate?

Under section 1516, O. S. 1931, all property of a decedent is charged with the payment of the debts of a decedent, but the rule is quite generally adhered to that before the real property of a decedent may be taken or appropriated for the payment of debts, the personal property of the decedent must be exhausted. Under the stipulation of facts in this case, the $1,920.70 paid into court by the surety is sufficient to pay all attorneys fees, costs, expenses, administration claims and legacies due from the estate. The lands therefore passed to the devisee, and could not have been taken possession of by the administrator for any purpose unless it can be said that the claim of the surety company is a debt against the estate of the decedent.

It appears to be the theory of the plaintiff in error that, since it paid the surcharge against the executor, it is subrogated to all his rights. It may be well settled that a surety is subrogated to all the rights of its principal, but it is equally well settled that a surety can acquire no greater rights than those possessed by its principal. Connecticut General Life Insurance Co. v. Cochran, 95 Okla. 111, 218 P. 313. The inquiry then arises as to what rights Harris would have against the estate for his own misconduct in making unauthorized or improper payments of the funds of the estate.

The Supreme Court of Alabama, in cases involving the estate of one Burchfield, had before it somewhat similar questions. In the spring of 1886, M. D. Burchfield died, the owner of certain lots. S. R. Burchfield was appointed administrator with one Speers a surety on his bond. About 18 months after his death, his widow and the other heirs at law sold to one Banks the lots in question for a valuable consideration. Later three judgments were rendered against the estate. Burchfield resigned and Speers was appointed administrator to succeed him. Speers brought suit against Banks to recover pos-

session of the land. In determining the question the Supreme Court of Alabama in the case of Banks v. Speers, 97 Ala. 560, 11 So. 841, said:

"We have shown that in this case there are unsatisfied debts against the estate of M. D. Burchfield, which have been reduced to judgment against his personal representatives. If sufficient personal assets, after carving out of them the widow's exemptions, were left to pay his debts, the case has not arisen which authorizes the sale of lands of decedent for their payment. Code 1886, secs. 2103, 2104. In other words, unless a case is shown in which 'the personal estate is insufficient' for the payment of the debts, the personal representative is not entitled to an order for the sale of the lands; nor, as we have shown, should he be allowed to recover the lands for purposes of administration, when it appears affirmatively that they cannot be applied to such purpose."

Continuing, the court said:

. "If the record before us truly sets forth the facts, the sale and conveyance to Banks, made, as they were, by the widow and all the heirs, vested in him all the title and ownership of the lots, except what may be required to pay the judgments brought to view in the trial below, and the attendant expenses of administration. This is the extreme limit of the right the administrator de bonis non can assert. Anything beyond that which may be realized from the sale of the lands will become the property of Banks, the purchaser. Such being the outside limit of the liability resting on the lots, it follows that if those debts and the attendant expenses are paid, the extreme right that Speers could assert will have been met and satisfied; and no further disturbance of Banks' title and possession can come from that quarter."

After the decision in the above case, the purchaser, Banks, brought an action against Speers for an injunction. Therein the Supreme Court of Alabama, in Banks v. Speers, 103 Ala. 436, 16 So. 25, said:

"The administrator de bonis non has no rights to this property, except for the purpose of paying debts. If there are personal assets sufficient to pay these, he is without authority to touch the land for that purpose; for it is well understood that if there are sufficient personal assets to pay the debts of the decedent, there can be, under the statutes, no order for the sale of his lands for their payment. The existence of debts to be paid, is a jurisdictional inquiry, in an application for the sale of lands for such purposes. Code, sec. 2103; Owens v. Childs, 58 Ala. 113; Lee v. Downey, 68 Ala. 98."

Still later, the third appeal went to the Supreme Court of Alabama on the question of the right of Burchfield, the administrator in chief, to recover out of the estate the amount which he had repaid his sureties on their having paid to the administrator de bonis non the amount of his surcharge. This was the case of Speers v. Banks, 125 Ala. 227, 27 So. 979, wherein the court said:

"When these two judgments were in this way paid by the sureties of S. R. Burchfield, there remained no indebtedness of said estate. It had all been paid, and said lots, sold and conveyed to Banks by all the distributees of the estate of said M. D. Burchfield, became his, by virtue of said conveyance, disembarrassed by any resort to them thereafter by the administrator to pay debts. In paying off those judgments S. R. Burchfield was merely replacing money which he had wasted or converted to his own use, and which it was his legal obligation to restore, leaving his intestate's estate just where it would have stood in the beginning, if he had not wasted its assets, but had applied them in payment of said debts. In refunding said money to his sureties, therefore, he was out nothing, and no one owed him anything for what he did. How is it then, he can claim of property belonging to Banks, the $500 he wasted and afterwards restored? Much more, how can he claim this amount out of rents of property he had sold and conveyed to Banks with covenants of warranty as to title—all the rents having accrued and been collected since he conveyed the property to him? There is wanting every element of merit in the claim, and the court committed no error in disallowing it."

We believe that these cases correctly decide the issues involved in the case before us. Under them Harris would have no right to reimbursement from the estate had he replaced the amount surcharged to him. The principal having no rights, the surety has none, and all debts against the estate having been paid, Thomas, as administrator with the will annexed, has no right to sell the real estate of the decedent. It follows that the judgment of the district court should be affirmed, and it is so ordered.

The Supreme Court acknowledges the aid of District Judge Jesse J. Worten, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.